IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD MATTHEW MINIELLY** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 15-6164 |
| | : | |
| **ACME CRYOGENICS, INC., JOEL** | : | |
| **HANSEN, TERRY BRUBAKER,** | : | |
| **ROBERT MUIR, ROBERT AURITT,** | : | |
| **And PETER LEONE,** | : | |
| | : | |
| **Defendants.** | : | |

**STENGEL, J.**                                                                                                **March 28, 2016**

## MEMORANDUM

Plaintiff, Richard Matthew Minielly, filed this suit in the Court of Common Pleas for Lehigh County alleging state statutory and common law claims, as well as a claim under the Fair Labor Standards Act. The case was removed to this Court under 28 U.S.C. § 1441 by Defendants on November 17, 2015. Presently pending is Minielly's Motion to remand the case to state court pursuant to 28 U.S.C. § 1447 (ECF 8), and Defendants' Motion to dismiss the complaint in part pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 6). The remand Motion is fully briefed; Plaintiff has not responded to the Motion to dismiss and the time for filing a response has lapsed. For the following reasons, the Motion to remand is denied, the Motion to dismiss is granted, and I grant Minielly leave to file an amended complaint as to those counts that I find are not futile.

**II.    STANDARD OF REVIEW — REMAND**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the place where such action is pending." That is, a defendant can remove an action to federal court pursuant to § 1441(a) if the plaintiff could have filed it here in the first instance. "The removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (other citations omitted)); Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005). After removal, a party can move to remand the action back to state court. 28 U.S.C. § 1447(c). The removing party bears the burden of establishing the court's jurisdiction and that removal was proper. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

In removal cases, the existence of federal court jurisdiction is usually determined under the well-pleaded complaint rule, which provides that federal question jurisdiction is established when the face of a properly pleaded complaint asserts a federal question. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S 109, 112-13 (1936)). The well-pleaded complaint rule "makes the plaintiff the master of the claim, meaning that he or she may avoid federal jurisdiction by forgoing federal causes of action and basing the claim on only state law." Scott v. Sysco Food Serv. of Metro N.Y., L.L.C., Civ. A. No. 07-3656, 2007 WL 3170121, *2 (D.N.J. Oct. 26, 2007) (citing Caterpillar, 482 U.S. at 392 (other citation omitted)). "Under the well-pleaded complaint rule, there can be no removal on the basis of a federal question unless the federal law under which the claim arises is a direct and essential element of the plaintiff's case." In re Cmty. Bank of N. Va., 418 F.3d 277, 293 (3d Cir. 2005) (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10-12 (1983); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908)).

**III.    ANALYSIS — REMAND**

In his Complaint, Minielly raises seven causes of action: Wrongful Termination Based on Violation of Public Policy under the Pennsylvania Health and Safety Act (Count I); Wrongful Termination Based on Violations of Public Policy under the federal Occupational Safety and Health Administration Act ("OSHA") (Count II); Wrongful Termination Based on Violations of Public Policy under the Pennsylvania Unemployment Compensation Law (Count III); Defamation (Count IV); Breach of Fiduciary Duty (Count V); Violation of the federal Fair Labor Standards Act (Count VI); and Violation under the Pennsylvania Wage Payment and Collection Act (Count VII). More specifically, in Count II, Minielly claims that "Defendants, in retaliation for Plaintiff's lawful and appropriate actions, harassed Plaintiff in violation of [OSHA]." (ECF 1 (Compl. ¶ 112)). In Count VII, he claims that "Defendants knowingly and intentionally violated the Fair Labor Standards Act in failing to pay Plaintiff his wages in the form of an earned non-merit-based annual financial pay supplement." (Id. ¶ 127.)

Minielly argues that the case is subject to remand to state court because, although he has included two claims premised upon federal statutory violations, he contends that "[n]either of these causes of action confer *superior* jurisdiction to the federal courts." (ECF 8 at 7 (emphasis added).) In respect to Count II, the claim for wrongful termination in violation of public policy contained in OSHA, he argues that the "'mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction.'" (Id. (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 813 (1986)). I find that Minielly is correct that this state law claim, even though it invokes OSHA, does not raise a federal question.

In Merrell Dow, the United States Supreme Court was confronted with the question of whether an action could properly be removed from state court where the alleged federal question

arose from a statute for which Congress has specifically provided that no private cause of action was available. The Court held that when Congress decides not to establish a private cause of action under a federal statute, it would be contrary to Congressional intent to confer federal subject matter jurisdiction over a case on the ground that plaintiff alleged a violation of a federal statute as an element of his state claim. Id. at 812. The Court concluded that,

> Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system. This conclusion is fully consistent with the very sentence relied on so heavily by petitioner. We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

Id. at 814. The United States Court of Appeals for the Third Circuit has interpreted Merrell Dow as conclusively establishing the requirement of a private cause of action as a "prerequisite for finding federal question jurisdiction." Smith v. Indus. Valley Title Ins. Co., 957 F.2d 90, 93 (3d Cir. 1992) (stating that "a federal rule of decision is necessary but not sufficient for federal jurisdiction. There must also be a right of action to enforce that rule.").

It is well settled that OSHA does not create a private right of action. See, e.g., Ries v. Nat'l R.R. Passenger Corp., 960 F.2d 1156, 1164 (3d Cir. 1992) citing United Steelworkers of Am. v. Marshall, 647 F.2d 1189, 1235-36 (D.C. Cir. 1980); Dravo Corp. v. Occupational Safety & Health Review Comm'n, 613 F.2d 1227, 1230 n. 2 (3d Cir. 1980); Jeter v. St. Regis Paper Co., 507 F.2d 973, 976-77 (5th Cir. 1975); Byrd v. Fieldcrest Mills, Inc., 496 F.2d 1323 (4th Cir. 1974) (per curium); Russell v. Bartley, 494 F.2d 334, 336 (6th Cir. 1974). Accordingly, there is can be no federal subject matter jurisdiction over the case based on the state tort claim that mentions OSHA, and removal of the case on that basis would not have been proper.

I find, however, that this merely a pyrrhic victory. Count VI, Minielly's FLSA claim, clearly provides a basis for federal question jurisdiction and removal. He argues that removal was improper because 29 U.S.C. § 216(b) specifically empowers both state and federal courts to hear FLSA claims. While Minielly is correct that the statute provides that an action under FLSA "may be maintained . . . in any Federal or State court of competent jurisdiction," id., the Supreme Court has rejected Minielly's assertion that this language bars removal of FLSA claims.

In Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 (2003), the plaintiff filed his FLSA claim in state court. Id. at 693. The defendant removed the case to federal court pursuant to 28 U.S.C. § 1441(a). Id. at 693-94. The Supreme Court considered whether the FLSA provision stating that claims "may be maintained . . . in any Federal or State court of competent jurisdiction" bars removal of a state court FLSA action to federal court. Id. at 693. The Court stated that "[t]here is no question that Breuer could have begun this action in the District Court." Id. at 694. Thus, the narrow issue before the Court was whether the FLSA barred removal under § 1441(a) even though the district court had subject-matter jurisdiction over the dispute. Id. at 693-94. The Court found that removal of a case arising under federal law pursuant to Section 1441(a) is prohibited "only if Congress expressly provided as much." Id. at 694. The Court went on to conclude that the phrase "may be maintained . . . in any Federal or State court" did not amount to an express bar to removal from state to federal court under § 1441(a). Id. at 694-96. Because there is original jurisdiction over Minielly's FLSA claim, Defendants' removal of the case to this court was proper and the Motion for remand, is denied.

**IV.     STANDARD OF REVIEW — MOTION TO DISMISS**

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." "[D]etailed pleading is not generally required." Connelly v. Lane

5

Const. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016). Rather, "the Rules demand 'only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" Id. (quoting Bell At. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted in original)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678; other citations omitted). The plausibility standard requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Connelly, 809 F.3d at 786 (quoting Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted in Connelly). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 786-87 (quoting Iqbal at 679).

The Twombly-Iqbal regime is a three step process. First, I "tak[e] note of the elements [the] plaintiff must plead to state a claim." Connelly at 787 (quoting Iqbal, 556 U.S. at 675). Second, I identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quoting Iqbal at 679). "Mere restatements of the elements of a claim are not entitled to the assumption of truth." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) (citation and editorial marks omitted)). Finally, "'[w]hen there are well-

6

pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Connelly at 787 (quoting Iqbal, 556 U.S. at 679; alteration in Connelly).

## V.     ANALYSIS — MOTION TO DISMISS

   a.    Counts I – III do not state cognizable claims and are futile.

Defendants argue that Counts I – III, each of which attempts to state a claim for wrongful discharge in violation of public policy, fail to state cognizable claims. Beginning with the premise that Pennsylvania is an at-will employment state, see Stumpp v. Stroudsburg Mun. Auth., 658 A.2d 333, 335 (Pa. 1995) (stating that an employee "may be terminated at any time, for any reason or for no reason"); Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511 (Pa. 2005) (stating that any limitations on an "employer's inherent right to operate its business" must be "few and carefully sculpted"), Defendants argue that Minielly has not stated claims that fall within the recognized exceptions to the at-will rule for a termination that violates "a clear mandate of Pennsylvania public policy." See McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000); Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009) (stating that "terminations in violation of public policy" may be found "only in the clearest of cases"). Pennsylvania has recognized three such exceptions: an employer "(1) cannot require an employee to commit a crime; (2) cannot prevent an employee from complying with a statutorily imposed duty; and (3) cannot discharge an employee when specifically prohibited from doing so by statute." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 (3d Cir. 2003) (citing Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998) while noting that the Pennsylvania Supreme Court has never formally adopted this holding). In addition, terminated employees may invoke the public policy exception only in the absence of any applicable

statutory remedy. Novosel v. Nationwide Ins. Co., 721 F.2d 894, 898 (3d Cir. 1983); Weaver, 975 A.2d at 568 n.10.

Defendants argue that the claim in Count I, wrongful termination in violation of public policy expressed in the Pennsylvania Health and Safety Act, 43 P.S. § 25-1 et. seq., is implausible because the Act neither imposes a statutory duty on employees to report safety concerns or violations, nor prohibits an employer from discharging an employee under any circumstances. Accordingly, they argue, the Act does not create a public policy that qualifies as an exception to the at-will employment rule. Notably, nothing in Minielly's Complaint asserts that he was under a statutory duty to report safety violations.[1] In contrast to those situations where courts have found the public policy exception applies, see, e.g., Hennessy, 708 A.2d at 1272 (finding an exception where plaintiff relied upon Pennsylvania Mental Health Procedures Act provision that explicitly "requires certain people, including mental health professionals, to report suspected child abuse"), Minielly fails to allege any specific statutory or administrative provision that placed upon him (or a person in his position) the affirmative duty to report Defendant's alleged safety violations. Accordingly, I find that Count I does not fit within the public policy exception to Pennsylvania's general at-will employment policy, making the claim implausible and any attempt to amend futile.

---

[1] Minielly, Defendant Acme's former chief financial officer, alleges only that he learned of at least one incident that should have been reported under the Health and Safety Act (Compl. ¶ 28). He does allege that he was required under the law to report it. He also alleges the company's building was too small and was ill-equipped (id. ¶ 29); that he suggested Acme hire a risk management team (id. ¶ 34); that he believed dangerous conditions violated OSHA and the Health and Safety Act (id. ¶ 45); and that he challenged the company's board about not reporting violations (id. ¶ 47). He alleges that he filed an OSHA whistleblower complaint on November 19, 2014 (id. ¶ 91); filed an amended OSHA whistleblower complaint on January 23, 2015 (id. ¶ 96); and filed an OSHA complaint of unsafe practices on April 4, 2015 (id. ¶ 99). There is no allegation that he was required under law to file these complaints.

Count II alleges wrongful termination in violation of public policy under OSHA. As noted, Minielly actually filed complaints with OSHA, but fails to allege he was under any statutory obligation to do so. Defendants argue that this count fails to state a plausible claim for relief because (1) terminated employees may invoke the public policy exception to employment at-will only in the absence of any applicable statutory remedy, see Novosel v. Nationwide Ins. Co., 721 F.2d 894, 898 (3d Cir. 1983); (2) OSHA provides a statutory remedy to employees who have been allegedly terminated due to reporting safety concerns, see 29 U.S.C. § 660(c)(2)[2]; and (3) Minielly concedes that he has actually availed himself of this statutory remedy by filing an OSHA whistleblower complaint. (Compl. ¶¶ 91, 96, 99.) Defendants add that, even though OSHA provides for a statutory remedy, it does not impose a duty to report safety violations.

I find that Count II is subject to dismissal for the reasons argued by Defendants. Nothing in the Complaint satisfies Minielly's pleading requirements to state a public policy exception based on OSHA. The statute does not impose a reporting requirement upon which a termination in violation of public policy exception may be based, even though it does provide a statutory

---

[2] The section provides that:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

29 U.S.C.A. § 660(c)(2).

remedy, and Minielly has availed himself of that remedy. Thus, the claim is implausible and any attempt to amend it would be futile.

Count III alleges a wrongful termination in violation of public policy under the Pennsylvania Unemployment Compensation Law. Minielly asserts that the

> Pennsylvania unemployment compensation law recognizes the rights of employees when harassed by supervisors and/or when terminated due to no fault of their own. Defendants violated the unemployment compensation law when they illegally harassed and verbally abused Plaintiff, their employee, and wrongfully terminated him for complaining about such treatment, thereby depriving Plaintiff of his employment and pay in violation under 43 P.S. § 402(b).

(Compl. ¶¶ 116-117.[3]) Defendants argue that this count fails to state a claim because, notably, Minielly admits that he never applied for unemployment compensation benefits following his discharge from Acme, and he does not allege that any Defendant interfered with or otherwise obstructed his ability to engage in any of his rights under the Unemployment Compensation Law. (See Compl. ¶ 86 (stating that "Minielly did not apply for unemployment compensation benefits but he would have been entitled to such.").) Furthermore, Count III does not allege that Plaintiff was terminated for engaging in any rights protected by the Pennsylvania Unemployment Compensation Law.

I find that Count III is subject to dismissal for the reasons argued by Defendants. First, one applies for unemployment benefits *after* one is terminated, not before; it does not logically follow that one's own termination can be caused by a violation of the Pennsylvania Unemployment Compensation Law. Second, as Minielly admits he never applied for unemployment benefits, and does not assert that any Defendant interfered with or otherwise obstructed his ability to collect benefits, it is simply not plausible that his termination was in

---

[3] Although Minielly cites "Section 402(b)," that Section was repealed in 1933. The Pennsylvania Unemployment Compensation Law is currently codified at 43 P.S. § 751, et seq.

violation of public policy contained in the Pennsylvania Unemployment Compensation Law.[4] Any attempt to amend would also be futile.

      b.      Count IV does not state a cognizable claim for defamation.

In Count IV, Minielly alleges he was defamed by Defendant Joel Hansen, Acme's Chief Executive Officer, who made knowingly and intentionally "false statements regarding Plaintiff to third parties, including but not limited to Gladstone employees[5] and the Acme board of directors." (Compl. ¶ 119.) Plaintiff alleges that, after disagreeing with Hansen over the management of the company, he overheard a phone conversation between Hansen and Defendant Robert Muir, a member of the Acme board of directors, in which Hansen contradicted information he had told Minielly; thereafter, Hansen started harassing him, screaming at him, and berating him publicly. (Id. ¶¶ 56-58.) He asserts that this verbal abuse occurred regularly,

---

[4] Defendants also argue that Counts I – III fail to specify whether they are asserted against Minielly's employer, Acme, or against the individually named Defendants. They argue that the claims are also implausible to the extent he intends to pursue these wrongful termination claims against any defendant other than Acme. I agree. A claim for wrongful termination cannot usually be maintained against a defendant other than an employee's employer. See Hrosik v. Latrobe Steel Co., Civ. A. No. 94-1361, 1995 WL 456212, at *6 (W.D. Pa. Apr.25, 1995) ("A wrongful discharge claim exists only against an employee's employer.") (citing Yetter v. Ward Trucking Corp., 585 A.2d 1022, 1026 (Pa. Super. Ct. 1991); Leslie v. The Philadelphia 1976 Bicentennial Corp., 332 F. Supp. 83, 93 (E.D. Pa. 1971); McGuire v. Palmerton Hosp., Civ. A. No. 12-1762, 2012 WL 5494924, at *5 (M.D. Pa. Nov. 13, 2012). To maintain a claim against an individual who is not the employee's employer, there must be an allegation that that the individuals "acted in an individual or personal capacity as opposed to a corporate capacity." Medley v. SugarHouse HSP Gaming, L.P., Civ. A. No. 12-6284, 2013 WL 1157349, at *4 (E.D. Pa. Mar. 21, 2013) (citing Brennan v. Cephalon, Inc., Civ. A. No. 04-3241, 2005 WL 2807195, at *13, (D.N.J. Oct.25, 2005); Leslie, 332 F. Supp. at 93). "Conduct taken in a personal capacity may involve the personal orchestration of a plaintiff's termination or personally asking a plaintiff to partake in a crime and then firing the plaintiff upon refusal. In essence, the malfeasance would need to be motivated by personal interest, and thus fall outside the scope of an individual's corporate duties. " Medley, at *4. There is no allegation that an individual defendant acted in their individual, as opposed to their corporate capacity. Accordingly, I find that these counts fail as to the individually named Defendants for this additional reason.

[5] Minielly does not explain the name "Gladstone." Defendants tell us it is the name of another company that purchased Acme.

every time they were at the office together. (Id. ¶ 61.) Hansen later gave Minielly a portable lie detector machine, and told Minielly he was a liar and could not be trusted. (Id. ¶ 63.) He alleges "[u]pon information and belief, Hansen falsely communicated to the Board and to others that Minielly was dishonest." (Id. ¶ 67.) Defendants argue that these allegations are insufficient to state a plausible defamation claim under Pennsylvania law.

In Pennsylvania, the tort of defamation is defined by statute; 42 P.S. § 8343 provides:

In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
    (1) The defamatory character of the communication.
    (2) Its publication by the defendant.
    (3) Its application to the plaintiff.
    (4) The understanding by the recipient of its defamatory meaning.
    (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
    (6) Special harm resulting to the plaintiff from its publication.
    (7) Abuse of a conditionally privileged occasion.

42 P.S. § 8343. Judge Robreno recently reviewed the Pennsylvania courts' interpretation of the statutory tort:

> A statement is deemed to be defamatory "if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." Joseph [v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008)], (citing MacElree v. Phila. Newspapers, Inc., 544 Pa. 117, 674 A.2d 1050, 1054 (1996)). "When communications tend to lower a person in the estimation of the community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession, they are deemed defamatory." Id. (quoting Green v. Mizner, 692 A.2d 169, 172 (Pa. Super. Ct. 1997)). "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." Tucker v. Phila. Daily News, 577 Pa. 598, 848 A.2d 113, 124 (2004) (quoting Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 229 A.2d 733, 734 (1967)). Importantly, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law. Moore v. Cobb-Nettleton, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005) (citing Elia v. Erie Ins. Exch., 430 Pa. Super. 384, 634 A.2d 657, 660 (1993)). In order for an "opinion" to be deemed capable of defamatory meaning under Pennsylvania law, it must "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion."

> Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001) (internal citation omitted). The statements alleged to be defamatory must be viewed in context. Baker v. Lafayette Coll., 516 Pa. 291, 532 A.2d 399, 402 (1987).

Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477-78 (E.D. Pa. 2010).

Defendants argue that Minielly neither alleges any specific defamatory statement, nor identifies the specific audience to whom the alleged defamatory statements were made. Minielly asserts only that Hansen screamed at and berated him in public, without identifying what he means by "public" or the defamatory nature of the statement. I find this is correct; as pled Minielly's complaint fails to set forth sufficient factual matter to state a plausible defamation claim.

The only defamatory allegation contained in the Complaint that even identifies to whom the statement was made is found in Paragraph 67, where Plaintiff alleges "[u]pon information and belief, Hansen falsely communicated to the Board and to others that Minielly was dishonest." I find that this allegation fails to meet the Iqbal standard. Allowance of pleading upon information and belief has been held to be appropriate under the Twombly / Iqbal regime only where the facts required to be pled are uniquely in the control of the defendant. See Wright v. Lehigh Valley Hosp. & Health Network, Civ. A. No. 10-431, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) (citing Brinkmeier v. Graco Children's Prods. Inc., Civ. A. 09-262, 2011 WL 772894, at *6 (D. Del. March 7, 2011). However, where information and belief averments "are merely 'a formulaic recitation of the elements of a cause of action' . . . [r]eliance by [Plaintiff] on information and belief cannot transform legal conclusions into plausible factual allegations." Essex Ins. Co. v. Miles, Civ. A. No. 10-3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010) (quoting Iqbal at 1950); but see Simonian v. Blistex, Inc., Civ. A. 10-1201, 2010 WL 4539450, at *3 (N.D. Ill. Nov. 3, 2010) (recognizing that nothing in Twombly or Iqbal suggests that

pleading on information and belief is "necessarily deficient"). Minielly's information and belief allegation is implausible because it states only the elements of a defamation claim — falsehood and publication — without any supporting factual matter. This allegation lacks the specificity necessary to meet the federal pleading requirements since he fails to state when, where or how the information was communicated. However, unlike other claims contained in the Complaint, it may be possible for Minielly to add additional averments to satisfy his pleading burden. In other words, this claim may not be futile. Accordingly, I will grant Plaintiff leave to amend this count to bring it within the federal pleading rules.

      c.      Counts V does not state a cognizable claim for breach of fiduciary duty.

Count V attempts to state a claim for breach of fiduciary duty. Based upon allegations that the board of directors of Acme rejected Minielly's attempt to purchase the business and ignored his attempts to correct workplace safety issues, Minielly — who alleges he is shareholder in the company[6] — asserts that the "Individual Defendants knowingly and intentionally violated their fiduciary duties to their shareholders in failing to disclose an opportunity for purchase [. . .] in failing to maintain a safe work environment [. . .] in failing to address the risk of harm posed by their employment of Defendant Hansen [and] in knowingly and intentionally promoting an unsafe work environment." (Compl. ¶¶ 122-125.) I find that these allegations are insufficient to state a plausible claim for breach of fiduciary duty.

The basis for the breach of fiduciary duty claim appears to be Minielly's status as a shareholder of the company. However, "[s]ince the Pennsylvania Business Corporation Law was

---

[6] Minielly alleges he "was and is a shareholder of ACME stocks." (Compl. ¶ 24.) He makes no other allegations in support of standing to allege a stockholder derivative action. See e.g., Fed. R. Civ. P. 23.1(b) (providing that the complaint in a derivative action "must be verified," must allege the action is not collusive to confer jurisdiction, and state with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members.")

amended in 1990, only the corporation has standing to enforce the duties of the board of directors." Stafford Inv. LLC v. Vito, Civ. A. No. 04-3182, 2008 WL 5062136, at *2 (E.D. Pa. Dec. 1, 2008) (citing 15 P.S. § 1717[7]). "A shareholder may not bring an action against an individual director unless the action is brought as a derivative action on behalf of the corporation." Id. (citing B.T.Z., Inc. v. Grove, 803 F. Supp. 1019, 1022 (M.D. Pa. 1992) (refusing to allow shareholders to bring an action against board members directly); Brindley v. Woodland Vill. Rest., Inc., 652 A.2d 865, 870 (Pa. Super. Ct. 1995) (refusing to hold individual corporate officers liable in the absence of evidence of malfeasance by the particular officer). Shareholders lack standing to sue the board of directors on their own behalf. Stillwell Value Partners I, LP v. Prudential Mut. Holdings Co., Civ. A. No. 06-4432, 2007 WL 2345281, at *9 (E.D. Pa. Aug. 15, 2007) (stating "Defendants contend that [the breach of fiduciary duty claim] asserted against the director defendants must be dismissed because the director defendants do not stand in a fiduciary relationship to plaintiff and, pursuant to section 1717 of the Pennsylvania Business Corporation Law ("BCL"), plaintiff lacks standing to bring a direct claim for breach of fiduciary duty against the corporation's directors.  I agree.")  Because the claim does not purport to be a derivative action, and the only basis for the claim is Minielly's status as a shareholder, the claim is not plausible and any attempt to amend would be futile.

        d.      Count(s) "VII" does not state a cognizable claim under the Pennsylvania Wage Payment and Collection Law.

---

[7] The section provides that the "duty of the board of directors, committees of the board and individual directors under section 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group." 15 P.S. § 1717.

Count VII attempts to state a claim under the Pennsylvania Wage Payment and Collection Law ("WPCL").[8] He contends that Defendants knowingly and intentionally violated the WPCL "in failing to pay Plaintiff his earned wages in the form of a defined earned and accrued incentive payout" and "in failing to pay Plaintiff his earned wages in the form of an accrued and earned annual incentive payout." (Compl. ¶¶ 129, 131.) In the body of his Complaint, Minielly alleges that he was terminated from his employment just prior to the vesting of his stock interests in Acme, and just prior to his receipt of his yearly earned bonus. (Id. ¶¶ 87-88.) He alleges that the individual Defendants "decided not to compensate Minielly for his earned and owed wages in the form of a defined annual bonus." (Id. ¶ 89.) Notably, he does not allege that he ever entered into an employment contract with his employer.

The WPCL "'provides employees a statutory remedy to recover wages and other benefits that are contractually due to them.'" Scott v. Bimbo Bakeries, USA, Inc. Civ. A. No. 10-3154, 2012 WL 645905, at *4 (E.D. Pa. Feb. 29, 2012) (quoting Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997). "'Accordingly, a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid. . . . Relief under the WPCL is implausible without existence of a contract.'" Id. (quoting Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007). The "'WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.'" Id. (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990).

---

[8] The Complaint actually contains two "Count VIIs." Both allege violations of the WPCL. It is unclear whether Plaintiff incorrectly numbered the counts and intended there to be eight counts, or whether he simply added an extra paragraph header. I discuss all of the WPCL allegations together.

Because Minielly does not allege that he has an employment contract with Acme, his claim(s) under the WPCL is/are not plausible. However, he may be able to amend the Complaint to allege an employment contract entitling him to the stock interest and bonus he alleges he is due. Thus the claim may not be futile and I grant Plaintiff leave to amend this count.

## VI. CONCLUSION

Plaintiff, having alleged a claim based on federal law, is not entitled to go back to state court. Other than the claim based on federal law, his Complaint is implausible and subject to dismissal under Fed. R. Civ. P. 12(b)(6). Because some of the implausible claims may be capable of amendment to bring them within the federal pleading requirements, I grant Plaintiff leave to amend the counts I have identified.

An appropriate Order follows.