IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD MATTHEW MINIELLY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 15-6164 |
| | : | |
| ACME CRYOGENICS, et al., | : | |
| Defendants | : | |

M E M O R A N D U M

STENGEL, J.                                                           June 21, 2017

Richard Matthew Minielly brings this action against his former employer Acme

Cryogenics and some of its officers, alleging a violation of the Pennsylvania Wage

Payment and Collection Act, aiding and abetting under the Pennsylvania Wage Payment

and Collection Act, a violation of the Fair Labor Standards Act,[1] and common law unjust

enrichment.  The defendants have filed a motion to dismiss under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Mr. Minielly has responded.  For the following

reasons, I will grant the motion to dismiss the Fair Labor Standards Act, and decline to

exercise supplemental jurisdiction over the remaining state law claims.

---

[1]  The Fair Labor Standards Act was intended to address existing "labor conditions [that were]
detrimental to the maintenance of the minimum standard of living necessary for health,
efficiency, and general well-being of workers . . ."  29 U.S.C. § 202.  Its purposes are to protect
workers from substandard wages and oppressive working hours.  See Cruz v. Chesapeake
Shipping, Inc., 932 F.2d 218, 226 (3d Cir. 1991).

## I. BACKGROUND[2]

This case arises out of the allegedly wrongful termination of Mr. Minielly by his former employer, Acme Cryogenics, Inc., and its various officers. The second amended complaint alleges that Mr. Minielly began working for Acme as a Chief Financial Officer and Vice President on July 15, 2013. The defendant employs approximately one-hundred-twenty employees with multiple locations in the United States, with headquarters in Allentown, Pennsylvania. Upon his hire, Mr. Minielly invested an equity interest of one and one quarter percent into the corporate defendant. Mr. Minielly and the defendants agreed upon an annual salary plus a guaranteed calculated bonus based on productivity as a wage benefit. Mr. Minielly also received stock interest in Acme. Mr. Minielly requested repayment on the wage benefit as well as on the shares and equity investment. The alleged understanding was that the investment was to be repaid to Mr. Minielly if the relationship between Mr. Minielly and Acme were to terminate, that is, Acme would repurchase Mr. Minielly's stock if the relationship ended. Acme was allegedly able to use Mr. Minielly's equity to improve profits for the company, and the company grew more profitable.

Mr. Minielly's job duties included: (1) financing grounds and materials; (2) reporting on cost-generating situations (including safety hazards); and (3) fulfilling all of his fiduciary obligations as Vice President and Shareholder to the organization's labor

---

[2]  The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

force, in addition to the interests of the organization and its stakeholders, which included both safety and legality of operation.  Mr. Minielly reported to Mike Brown, the then Chief Executive Officer, and the Board of Directors, which had a total of five people at the time, including Mr. Brown.  On October 15, 2014, the Board announced the hiring of Joel Hansen, the new Chief Executive Officer.

The workers complained to Mr. Minielly about the dangerous conditions at work, their wages, and the lack of empathy of management.  For example, their take-home pay had decreased, yet layoffs and workload had increased.  The workers also explained that reportable incident rates had gone up due to unsafe working conditions.  Mr. Minielly wanted to mitigate the dangerous working condition by purchasing a larger, more secure, and more appropriately organized building for the plant workers.  He also sought to bring in new management who would be more sympathetic to the workers, but the Board rejected his efforts.

Mr. Minielly challenged the Defendant Board and Defendant Joel Hansen about not reporting health and safety violations to the appropriate authorities, about failing to purchase a new building for the workers, and about bringing in new management to improve safety.  Mr. Minielly also caught Mr. Hansen misrepresenting his intentions to the Board, which resulted in ongoing harassment and assault by Mr. Hansen.  Mr. Minielly reported Mr. Hansen's actions to the Board, but it refused to redress the issue with Mr. Hansen.  Instead, Mr. Hansen and the Board terminated Mr. Minielly, and refused to give him his belongings, or to permit him to meet with Human Resources. They also refused to pay him his wages due.

Mr. Minielly alleges that his actions directly benefited Acme's overall financial picture.  His investment in the company, in the form of equity, directly benefited Acme.  Mr. Minielly had accrued and earned his non-discretionary benefit up until his termination in November 2014.  Mr. Minielly was terminated just prior to payout on his wage benefit, which equaled more than fifty thousand dollars as of November, and just prior to the vesting of his stock interests in Acme.  He further alleges that he was terminated wrongfully for complaining about unsafe working conditions created by Mr. Hansen and the Board.

Acme and its individual co-defendants have refused to repay and/or compensate Mr. Minielly for any and all of the monies owed him.  Mr. Hansen and the Board, as decision-makers, allegedly terminated Mr. Minielly for complaining about unsafe work environments, both for the workers and for him.  They refused to compensate Mr. Minielly for his earned and owed wages in the form of a defined annual bonus.  They also allegedly refused to return Mr. Minielly's signature stamp, which had his hand-signed signature printed on it.  Mr. Minielly believes that this was done in an effort to misuse his signature.  Mr. Hansen and the Board, as decision-makers, further refused to give Mr. Minielly access to his personnel file, which was addressed only after he filed an agency complaint against them for noncompliance with the law.  Between the loss of his equity, his shares of interest, and his lost bonus, Mr. Minielly claims to have lost more than three hundred fifty thousand dollars in addition to other losses.

4

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions.  Iqbal, 556 U.S. at 679.  Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  Id.; see also Phillips, 515 F.3d at 234-235.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

## III.  DISCUSSION

The second amended complaint alleges that the "defendants knowingly and intentionally violated the Fair Labor Standards Act in failing to pay [Mr. Minielly] his earned wages in the form of a defined annual bonus as well as other fringe benefits. See 2nd Am.Compl. ¶ 88.

I must agree with the defendants that Mr. Minielly has no basis for alleging his entitlement to any payment under the bonus program because he was not working for the defendant at the time the bonus would have been paid. Private plaintiffs may bring a claim for violation of the FLSA for failure to include bonuses in overtime compensation under 29 U.S.C. §207(e). Mr. Minielly is an exempt employee, however, by the terms of his offer letter. He had no right to any other form of payment other than a wage meeting the statutory white collar exemption under the FLSA. Mr. Minielly has not alleged that he was not paid the required wage save the allegation for failure to pay a bonus and other

6

fringe benefits.  I note that Mr. Minielly has not alleged that he is subject to the minimum

wage and maximum hours requirements of the FLSA.  The terms of Mr. Minielly's offer

letter make it clear that none of his fringe benefits would survive his termination.

Mr. Minielly admits that he was terminated "... just prior to the vesting of his stock

interests."  The fact is that the defendants should not have to guess the basis for Mr.

Minielly's claims.  He must allege facts sufficient to show that he is entitled to relief in

order to give the defendants fair notice of what the claim is and the grounds on which it

rests.  Mr. Minielly's allegations of entitlement to an unspecified annual bonus are

wholly insufficient to put the defendants on notice of the claims against them.  Claims for

nonpayment of a bonus by exempt employees are a matter of contract rather than a

violation of the Fair Labor Standards Act.  Mr. Minielly was an exempt employee under

29 C.F.R. § 541, and thus, he is not entitled to FLSA protection for non-payment of a

bonus.  Accordingly, I will dismiss the claim for a violation of the Fair Labor Standards

Act.

Finally, Mr. Minielly has also brought several state law claims against the

defendants, including a violation of the Pennsylvania Wage Payment and Collection Act,

aiding and abetting under the Pennsylvania Wage Payment and Collection Act, and

common law unjust enrichment.  Having dismissed Mr. Minielly's federal claim, I

decline to exercise supplemental jurisdiction over these remaining state law claims.  See

28 U.S.C. § 1367(c)(3) (stating that a federal district court may decline to exercise

supplemental jurisdiction over state law claims when the district court has dismissed all

claims over which it has original jurisdiction).  Accordingly, I will dismiss those claims

without prejudice.

An appropriate Order follows.